**SINGH, SINGH & TRAUBEN, LLP**
**MICHAEL A. TRAUBEN** (**SBN**: 277557)
mtrauben@singhtraubenlaw.com
400 S. Beverly Drive, Suite 240
Beverly Hills, California 90212
Tel: 310.856.9705 | Fax: 888.734.3555

*Attorneys for Defendants*
GLOBAL PRODUCT MANAGEMENT, INC. *and*
DISH DIRECT, INC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| MICHAEL WILLIAMS, BRIAN STINSON, and JUSTIN BREWER, on behalf of themselves and all others similarly situated, | ) Case No.: **2:25-cv-02264 FMO (DTBx)** ) ) The Honorable Fernando M. Olguin ) Courtroom 6D ) |
| Plaintiffs, | ) ) **DEFENDANTS' NOTICE OF MOTION AND** |
| v. | ) **MOTION TO DISMISS PLAINTIFFS'** ) **COMPLAINT PURSUANT TO FED. R. CIV.** ) **P. 12(b)(6); MEMORANDUM OF POINTS** |
| GLOBAL PRODUCT MANAGEMENT, INC., NATIONAL PRODUCT EXPLORATION, INC., AND DISH DIRECT, INC., | ) **AND AUTHORITIES** ) ) [Filed concurrently with [Proposed] Order] ) |
| Defendants. | ) **Hearing Date:**  January 8, 2026 ) **Hearing Time:** 10:00 a.m. ) **Location:**      Courtroom 6D ) ) **ACTION FILED:** August 29, 2025 |

1

SINGH,
SINGH &
TRAUBEN,
LLP

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on **January 8, 2026** at **10:00 a.m.**, or as soon thereafter as this matter may be heard in **Courtroom 6D** of the above-titled Court, located at **350 W. 1st Street**, **Courtroom 6D**, **6th Floor**, **Los Angeles**, **California 90012**, defendants Global Product Management, Inc. ("**GPM**") and Dish Direct, Inc. ("**Dish Direct**") ("**Defendants**") will and hereby do move for an order dismissing the complaint ("**Complaint**") filed by plaintiffs Michael Williams, Brian Stinson, and Justin Brewer ("**Plaintiffs**") in its entirety for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

Defendants make this motion pursuant to Fed.R.Civ.P. 12(b)(6) on the following grounds:

1.    **All Claims Are Impliedly Preempted by the FDCA**: Plaintiffs' claims, premised on alleged FDCA violations incorporated via California's Sherman Law (Cal. Health & Saf. Code §§ 110100 et seq.), are impliedly preempted by the FDCA's exclusive enforcement scheme, 21 U.S.C. § 337(a), as they require courts to adjudicate whether the Products' labels make impermissible implied disease or aphrodisiac claims, a fact-intensive regulatory determination reserved solely to the FDA.

2.    **Plaintiffs Fail to Plead Affirmative Falsity or Plausible Deception**: Even absent preemption, Plaintiffs' allegations amount to an impermissible lack-of-substantiation theory, which California law does not recognize for private plaintiffs and which imposes a substantiation burden exceeding FDCA requirements. In addition, the subject product labels do not plausibly imply disease claims under the reasonable consumer test, as the challenged phrases are permissible structure/function representations imbued with clear FDA disclaimers and asterisks.

3.    **The Complaint Fails Rule 9(b)'s Heightened Particularity Requirements**: All claims sound in fraud and fail to specify the "who, what, when, where, and how" of the alleged misconduct, including which specific Product

representations each Plaintiff allegedly relied upon, or why they are false or misleading.

4.    **Plaintiffs Lack Article III Standing for Injunctive Relief**: Plaintiffs, as past purchasers clearly now aware of the alleged issues they claim exist with the Products, all of which are verifiable via public labels and disclaimers, face no real or immediate threat of future harm sufficient to support any request for injunctive relief.

5.    **Plaintiffs' Claims Are Time-Barred**: The Complaint's facial allegations confirm that Plaintiffs' purported purchases fall outside the applicable four-year UCL (Bus. & Prof. Code § 17208) and three-year FAL/CLRA (Code Civ. Proc. § 338(a); Civ. Code § 1783) statute of limitations periods, with Plaintiffs failing to allege any plausible tolling or delayed discovery justifications.

This motion is based upon this notice of motion, the accompanying memorandum of points and authorities in support thereof, the complete files and records in this action, any oral argument heard on this motion, and any further argument and evidence that Defendants may present at or before the hearing on this motion.

This Motion is made following conference of counsel pursuant to L.R. 7-3, which took place on November 19, 2025.

**DATED**: November 26, 2025                    Respectfully Submitted,

                                                **SINGH, SINGH & TRAUBEN, LLP**
                                                **MICHAEL A. TRAUBEN**


                                                By:   */s/ Michael A. Trauben*
                                                        Michael A. Trauben

                                                ***Attorneys for Defendants***
                                                GLOBAL PRODUCT MANAGEMENT, INC. *and*
                                                DISH DIRECT, INC.

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................... 1

II.  THE RELEVANT FACTUAL ALLEGATIONS  ............................ 2

III.  LEGAL STANDARD ............................................. 3

IV.  ARGUMENT ..................................................... 4

    A.  All Claims Are Preempted by the FDCA ...................... 4

    B.  Plaintiffs Fail to Plead Affirmative Falsity ................. 6

    C.  There is No Plausible Implied Disease Claim Under the Reasonable Consumer Test ........................................... 8

    D.  The Complaint Fails Rule 9(b) Particularity ................. 11

    E.  Plaintiffs Lack Article III Standing to Pursue Injunctive Relief .............. 12

    F.  Plaintiffs' Claims Are Time-Barred ......................... 14

V.  THE COURT SHOULD DENY LEAVE TO AMEND ..................... 16

VI.  CONCLUSION ................................................. 16

SINGH,
SINGH &
TRAUBEN,
LLP

# TABLE OF AUTHORITIES

## FEDERAL CASES

### U.S. Supreme Court

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...................................................................... 4, 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).............................................................. 4

*City of L.A. v. Lyons*, 461 U.S. 95 (1983)...................................................................... 13

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982)................................. 4

### U.S. Circuit Court

*Avagyan v. Holder*, 646 F.3d 672 (9th Cir. 2011) .......................................................... 15

*Bubak v. Golo, LLC*, No. 24-492, 2025 WL 2860044 (9th Cir. Oct. 9, 2025)............. 1, 6

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011)........................ 4

*Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856 (9th Cir. 2009)..................... 4

*Dachauer v. NBTY, Inc.*, 913 F.3d 844 (9th Cir. 2019)................................. 5, 6, 7, 8, 10

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) ................................ 13

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) ......................................................... 9

*Hoang v. Bank of Am., N.A.*, 910 F.3d 1096 (9th Cir. 2018)......................................... 16

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ..................................... 11, 12

*Kroessler v. CVS Health Corp.*, 977 F.3d 803 (9th Cir. 2020) ................................ 2, 7-9

*Mayfield v. U.S.*, 599 F.3d 964 (9th Cir. 2010) ............................................................. 13

*McGinity v. Procter & Gamble Co.*, 69 F.4th 1093 (9th Cir. 2023) ......................... 9, 10

*Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021) ................................................ 10

SINGH,
SINGH &
TRAUBEN,
LLP

*Moore v. Mars Petcare US, Inc*., 966 F.3d 1007 (9th Cir. 2020)................................... 12

*Nexus Pharms., Inc. v. Cent. Admixture Pharm. Servs., Inc.*
    48 F.4th 1040 (9th Cir. 2022) ............................................................... 5, 6

*Somers v. Apple, Inc*., 729 F.3d 953 (9th Cir. 2013) ....................................... 16

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)................................ 4, 11

*Whiteside v. Kimberly Clark Corp*., 108 F.4th 771 (9th Cir. 2024) .......................... 10-11

*Williams v. Gerber Prods. Co*., 552 F.3d 934 (9th Cir. 2008) ................................. 10-11

**U.S. District Court**

*Barnes v. U.S. Sec. & Exch. Comm'n*, No. CV 18-7644-GW(GJSX)
    2019 WL 13045076 (C.D. Cal. Sept. 12, 2019)................................................ 4

*Bobo v. Optimum Nutrition, Inc., No.:* 14CV2408 BEN (KSC)
    2015 WL 13102417 (S.D. Cal. Sep. 18, 2015) ........................................... 11

*Cimoli v. Alacer Corp*., 546 F.Supp.3d 897 (N.D. Cal. 2021) ................................ 13, 15

*Cordes v. Boulder Brands USA, Inc.,* No. CV 18-6534 PSG
    2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) ........................................... 13

*Gershman v. Bayer HealthCare LLC,* No. 14-CV-05332-JSC
    2015 WL 2170214 (N.D. Cal. May 8, 2015)............................................. 12

*In re Toyota Motor Corp.,* 785 F. Supp. 2d 883 (C.D. Cal. 2011) ................................. 4

*Matic v. United States Nutrition, Inc.*, No. CV189592PSGAFMX
    2019 WL 3084335 (C.D. Cal. Mar. 27, 2019) ...................................... 14

*Plumlee v. Pfizer, Inc.*, No. 13-CV-00414-LHK
    2014 WL 695024 (N.D. Cal. Feb. 21, 2014)............................................. 15

*Quonset Partners, LLC v. City of Coachella*, No. EDCV 22-672 JGM
    2022 WL 18359138 (C.D. Cal. Dec. 9, 2022)....................................... 16

SINGH,
SINGH &
TRAUBEN,
LLP

TABLE OF CONTENTS AND AUTHORITIES

*Shanks v. Jarrow Formulas, Inc.*, No. LACV1809437PAAFMX
    2019 WL 7905745 (C.D. Cal. Dec. 27, 2019)................................. 13-14

## STATE COURT CASES

## California Supreme Court

*Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185 (2013) .............................. 14

*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005) ........................... 15

## California Court of Appeals

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*
    107 Cal. App. 4th 1336 (2003) ......................................... 7, 8

## Code and Statutes

21 C.F.R. § 101.93 ....................................................... 2

21 C.F.R. § 310.528 ...................................................... 1

21 U.S.C. § 337 ...................................................... 1, 5

21 U.S.C. § 343 ............................................. 1, 2, 3, 5, 6, 9,

Bus. & Prof. Code § 17208 .............................................. 14

Cal. Health & Safety Code §§ 110100 ................................. 1, 3, 6

Cal. Health & Safety Code §§ 111550 ................................. 1, 3, 6

Civ. Code § 1783 ...................................................... 14

Code Civ. Proc. § 338 .................................................. 14

TABLE OF CONTENTS AND AUTHORITIES

SINGH,
SINGH &
TRAUBEN,
LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Defendants Global Product Management, Inc. ("**GPM**") and Dish Direct, Inc. ("**Dish Direct**") (collectively, "**Defendants**") respectfully move the Court for an order dismissing the complaint ("**Complaint**") filed by plaintiffs Michael Williams, Brian Stinson, and Justin Brewer ("**Plaintiffs**"). Plaintiffs' putative class action complaint challenges the labeling and marketing of Defendants' dietary supplements ExtenZe Original ("**OG**"), ExtenZe Extended Release ("**ER**"), and ExtenZe with Testosterone Boost ("**TB**") (collectively, the "**Products**") as allegedly implying they treat sexual dysfunction or function as aphrodisiacs, thereby rendering the Products unapproved new drugs in violation of the Federal Food, Drug, and Cosmetic Act ("**FDCA**"), 21 U.S.C. § 343(r)(6) and 21 C.F.R. § 310.528. Plaintiffs incorporate this purported FDCA violation into California's Sherman Food, Drug, and Cosmetic Law ("**Sherman Law**") and Cal. Health & Safety Code §§ 110100 *et seq*., to underpin claims under California's Unfair Competition Law ("**UCL**"), False Advertising Law ("**FAL**"), and Consumers Legal Remedies Act ("**CLRA**").

Plaintiffs' claims are fatally flawed and warrant dismissal on multiple, independent grounds. First, the Ninth Circuit has squarely held that state law claims, including UCL claims, premised on alleged violations of the FDCA via the Sherman Law are impliedly preempted by the FDCA's exclusive enforcement scheme, 21 U.S.C. § 337(a). Such claims effectively seek private judicial enforcement of the FDCA, a role Congress reserved exclusively for the Food and Drug Administration ("**FDA**"), by requiring courts to adjudicate whether the Products' labels make impermissible implied disease or aphrodisiac claims, a fact-intensive inquiry into regulatory compliance that usurps the FDA's authority. See Bubak v. Golo, LLC, No. 24-492, 2025 WL 2860044, at *1–2 (9th Cir. Oct. 9, 2025) (unpublished) (dismissing UCL claim premised on Sherman Law incorporation of FDCA, explaining that FDCA expressly prohibits private enforcement and state law claims resting upon alleged violations of the FDCA are preempted).

SINGH,
SINGH &
TRAUBEN,
LLP

Second, Plaintiffs' allegations of falsity or misleadingness amount to nothing more than an impermissible lack-of-substantiation theory, which California law does not recognize for private plaintiffs, and which is preempted insofar as it imposes a substantiation burden exceeding the FDCA's requirements. Plaintiffs offer no affirmative evidence demonstrating that the Products' ingredients fail to support the claimed structure/function benefits, relying instead on conclusory assertions of inefficacy. *See Kroessler v. CVS Health Corp.*, 977 F.3d 803, 811–12 (9th Cir. 2020) ("[a]lthough the FDCA requires manufacturers to have substantiation for their structure/function claims, California law prohibits private plaintiffs from demanding that advertisers substantiate their claims").

Third, the Product labels do not make implied disease or aphrodisiac claims under the reasonable consumer standard. Phrases using terms such as "enhancement" and "boosting" are permissible structure/function claims under FDA regulations and guidance, describing the Products' role in supporting normal physiological functions rather than diagnosing, treating, curing, or preventing any disease. 21 U.S.C. § 343(r)(6); 21 C.F.R. § 101.93. Moreover, the FDA disclaimer on the Products that the "statements have not been evaluated by the Food and Drug Administration" and that the Products are "not intended to diagnose, treat, cure or prevent any disease," coupled with asterisks leading directly to back-panel clarifications, resolve any ambiguity as a matter of law, cementing the labels as non-deceptive to reasonable consumers. *Kroessler*, 977 F.3d at 815–16 (glucosamine-based supplements did not present implied disease claims on face of labels alone).

Compounding these substantive deficiencies, the Complaint fails to comply with Fed.R.Civ.P. 9(b)'s particularity requirements for fraud-based claims. In addition, Plaintiffs lack Article III standing to seek injunctive relief and their claims are further time-barred on the face of the pleading.

Accordingly, based upon these incurable defects plaguing Plaintiffs' putative class action Complaint, Defendants respectfully request that the Court grant Defendants' motion to dismiss Plaintiffs' Complaint without leave to amend.

## II.    THE RELEVANT FACTUAL ALLEGATIONS

As alleged, Defendants market and sell dietary supplement products. (Compl. ¶¶ 3–4, 19). The labels state the Products are dietary supplements that support male enhancement, enhanced pleasure and performance, and testosterone levels. (*Id.* ¶¶ 36, 40–41, 44-45, 49–54, 57–59, 63–67). Each variant's label prominently features the mandatory FDCA disclaimer: "These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease." (*Id.* ¶¶ 116, 120). Moreover, conspicuous asterisks accompany each of the purported statements, prominently directing consumers to this disclaimer and the full ingredient list on the back of each panel. (*Id.* ¶¶ 3, 40, 53, 67, 116, 118).

Plaintiffs assert that these representations imply the Products treat sexual dysfunction or act as aphrodisiacs, purportedly violating FDCA prohibitions on unapproved new drugs, namely 21 U.S.C. § 343(r)(6) and 21 C.F.R. § 310.528. (*Id.* ¶¶ 36–74). Invoking the Sherman Law's incorporation of FDCA standards, Cal. Health & Safety Code §§ 110100, 111550, Plaintiffs ground their UCL "unlawful" prong claim in this alleged violation. (*Id.* ¶¶ 39, 52, 66, 81-82). Devoid of citation to any supporting evidence, Plaintiffs further contend the claims are false and misleading because "none of the ingredients … safely and effectively" deliver the promised benefits. (*Id.* ¶¶ 5, 9, 37, 50, 64).

Each Plaintiff claims to have suffered economic injury from overpayment for "ineffective" items, while claiming they would "considering purchasing" the Products "in the future if they could be assured that the products were (1) safe and effective and (2) sold in compliance with all FDA regulations and California law." (*Id.* ¶¶ 122-130). Although Plaintiff Stinson's alleged last purchase was in 2020, Plaintiffs attempted to invoke the delayed discovery doctrine based upon not being "experts on FDA Regulations" but nonetheless somehow becoming aware of governing FDA law in May 2025 (*Id.* ¶¶ 123, 131–132).

///

SINGH,
SINGH &
TRAUBEN,
LLP

## III. LEGAL STANDARD

Under Rule 12(b)(6), a pleading may be dismissed as a matter of law due to lack of a cognizable legal theory, or insufficient facts to support a cognizable legal claim. *Barnes v. U.S. Sec. & Exch. Comm'n*, No. CV 18-7644-GW(GJSX), 2019 WL 13045076, at *1 (C.D. Cal. Sept. 12, 2019). If a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). Although courts accept well-pleaded factual allegations as true on a motion to dismiss, mere "legal conclusions" are not entitled to "the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Where, as here, claims sound in fraud, Rule 9(b) imposes a heightened particularity requirement. To be pleaded with particularity, allegations of fraud must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation and quotation marks omitted) (superseded by statute on other grounds). This includes alleging "'the who, what, when, where, and how' of the misconduct charged." *Id.* (citation omitted). In addition, allegations of fraud made against multiple defendants "may not simply lump together multiple defendants without specifying the role of each defendant in the fraud." *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 919 (C.D. Cal. 2011). Allegations of fraud must satisfy both Rule 9(b)'s particularity requirement and Iqbal's plausibility standard. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

## IV. ARGUMENT

### A. All Claims Are Preempted by the FDCA

Federal preemption can be either express or implied. <u>See</u> *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152–53 (1982). Express preemption exists when a statute explicitly addresses preemption. *Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856, 863 (9th Cir. 2009). "When a federal statute contains an explicit preemption

SINGH, SINGH & TRAUBEN, LLP

provision, we are to identify the domain expressly pre-empted by that language." (*Id.*) (internal quotations omitted). Here, the FDCA contains an express preemption provision that provides that no state may "directly or indirectly establish . . . any requirement for the labeling of food," including dietary supplements, "that is not identical to the federal requirements." 21 U.S.C. §343-1(a); *see* 21 U.S.C. §321(ff) ("a dietary supplement shall be deemed to be a food within the meaning of this chapter"). And in the case of dietary supplements, both the FDCA and FDA labeling regulations require the labeling of products with a statement of identity, using the term "Dietary Supplement," as one of its principal features. 21 U.S.C. §§321(ff)(2)(C) and 343(s)(2)(B); 21 C.F.R. 101.3(g). Because the FDCA not only permits, but requires, the labeling of the Products as "Dietary Supplements," it expressly preempts Plaintiffs' purported claims that, by doing so, Defendants somehow violated state consumer protection laws.[1] Furthermore, "§ 343-1(a)(5) preempts state-law requirements for claims about dietary supplements that differ from the FDCA's requirements." *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 848 (9th Cir. 2019).

Here, Plaintiffs' claims are impliedly preempted because they amount to private enforcement of the FDCA, contravening Congress's deliberate choice to vest enforcement exclusively in the FDA. 21 U.S.C. § 337(a) ("all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States"); *Nexus Pharms., Inc. v. Cent. Admixture Pharm. Servs., Inc.*, 48 F.4th 1040, 1049 (9th Cir. 2022) (to permit plaintiff to proceed with claim that defendants violated FDCA when the FDA did not so determine would permit plaintiff to assume enforcement power which the statute does not allow and require finder of fact to make decision the FDA itself did not make).

---

[1] The phrase "not identical to" means "that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food [that] . . . [a]re not imposed by or contained in the applicable [federal regulation] . . . or [d]iffer from those specifically imposed by or contained in the applicable [federal regulation]." 21 C.F.R. § 100.1(c)(4).

SINGH,
SINGH &
TRAUBEN,
LLP

Plaintiffs' theory exemplifies this impermissible private enforcement. They allege the Products' labels imply treatment of sexual dysfunction or aphrodisiac effects, violating FDCA prohibitions on unapproved drugs, 21 U.S.C. § 343(r)(6) (barring disease claims on supplements) and 21 C.F.R. § 310.528 (prohibiting aphrodisiac representations). (Compl. ¶¶ 26–48). The UCL "unlawful" prong incorporates this via the Sherman Law, which mirrors FDCA standards. Cal. Health & Safety Code §§ 110100, 111550; id. ¶¶ 96–106. As in *Bubak*, where the UCL claim "was premised on [defendant's] alleged violation of the FDCA, 'as incorporated into California law in the Sherman [Law],'" this framework "necessarily require[s] litigating 'the alleged underlying FDCA violation,' which is 'reserved for the FDA.'" *Bubak*, 2025 WL 2860044, at *1–2, quoting *Nexus Pharms.*, 48 F.4th at 1049. Adjudicating whether Plaintiffs' proffered context—e.g., cultural associations with "male enhancement"—transforms structure/function claims into implied disease claims would demand the very regulatory expertise Congress allocated to the FDA, including evaluation of label design, consumer perception surveys, and ingredient efficacy under 21 C.F.R. § 101.93. *Id.* at *2 ("further analysis is needed" to classify claims, preempting private suits). The FDCA "preempts private suits seeking judicial resolution of such questions." *Bubak*, 2025 WL 2860044, at *2.

The FAL and CLRA claims fare no better, as they rise or fall with the same preempted predicate: that the labels violate FDCA standards via the Sherman Law. *Bubak*, 2025 WL 2860044, at *2 (extending preemption to all derivative state claims). Permitting these suits would conflict with Congress's choice to limit enforcement to the FDA and impose nonuniform labeling obligations exceeding federal requirements. *Bubak*, 2025 WL 2860044, at *1 ("Congress's preemption of a state's food labeling regulations that are 'not identical to' FDCA requirements mirrors Congress's preemption of a state's drug regulations that are 'different from, or in addition to' FDCA requirements"); *Dachauer*, 913 F.3d at 848 (preempting where state claims would impose requirements "not identical" to the requirements in the FDCA).

Because the FDCA preempts private suits seeking judicial resolution of these questions, Plaintiffs' claims are preempted.

## B. Plaintiffs Fail to Plead Affirmative Falsity

Independent of preemption, Plaintiffs' claims collapse based upon Plaintiffs' failure to plead the affirmative falsity required to establish UCL, FAL, and CLRA liability. California's consumer protection statutes prohibit both false advertising and representations "that [are] literally true, but which [are] actually misleading or [have] a capacity, likelihood, or tendency to deceive or confuse the public." *Dachauer*, 913 F.3d at 847, <u>citing</u> Cal. Bus. & Prof. Code § 17200; Cal. Civ. Code § 1770. Critically, however, "California law prohibits private plaintiffs from demanding that advertisers substantiate their claims . . . [r]ather, the onus is on plaintiffs to prove that advertisers' claims are false." *Kroessler*, 977 F.3d at 811; <u>see also</u> *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*, 107 Cal. App. 4th 1336, 1348 (2003) ("it would be inappropriate to shift the burden of proof to the defendant in a private plaintiff false advertising action when the private plaintiff is not statutorily authorized to seek substantiation of the advertising claim from the defendant"). Moreover, to survive dismissal, Plaintiffs must plead "matching evidence contradicting those claims," such as studies directly refuting the specific structure/function representations on the labels. *Kroessler*, 977 F.3d at 811–12.

Here, Plaintiffs' threadbare averments that "none of the ingredients in the ExtenZe Products, individually or in combination, safely and effectively increase libido or testosterone levels or improve sexual performance," (<u>Compl.</u> ¶¶ 5, 9, 19) encapsulate an impermissible substantiation demand, unadorned by "matching evidence contradicting those claims," such as peer-reviewed scientific studies, experts opinions, or other evidence non-conclusory evidence demonstrating inefficacy for the specific representations at issue. This is precisely the type of lack-of-substantiation claim that is not cognizable under California law, as it shifts the burden to Defendants to prove the claims true rather than requiring Plaintiffs to demonstrate falsity. *Kroessler*, 977 F.3d at 810-12 (reversing dismissal where plaintiff pleaded studies showing glucosamine does not support joint

SINGH,
SINGH &
TRAUBEN,
LLP

7

health, but emphasizing that mere unsubstantiated claims are insufficient and preempted if they impose a different standard than the FDCA); *Dachauer*, 913 F.3d at 847 (affirming dismissal where plaintiff alleged lack of efficacy without affirmative proof of falsity); *Nat'l Council Against Health Fraud, Inc.*, 107 Cal.App.4th at 1348 (California law prohibits private plaintiffs from demanding advertisers substantiate their claims as in "actions for false advertising, the prosecuting authority is expressly assigned the burden of proof").

Where pleaded evidence "mismatches" the actual claims, such as alleging no disease prevention or treatment when the labels make only structure/function claims like "support" for normal functions, it is not only insufficient but impliedly preempted under the FDCA. Here, Plaintiffs' purported "evidence" mismatches their alleged claims. Plaintiffs attack the Products for failing to "treat" or "cure" sexual dysfunction (Compl. ¶¶ 26–48, 72–74), yet the labels assert only supportive roles in normal functions such as supporting male enhancement and enhancing pleasure and performance—not therapeutic guarantees. Stated otherwise, Plaintiffs' allegations suffer from this exact mismatch, as the labels claim to "support" male enhancement functions and testosterone levels, not to treat or cure any disease or guarantee results. (Compl. ¶¶ 40–67). This glaring discrepancy is not only fatal to plausibility but further invites preemption, as resolving it would require courts to calibrate a different substantiation standard than the FDCA's for structure/function claims. *Dachauer*, 913 F.3d at 848 (dismissing where studies showed vitamin E does not prevent cardiovascular disease, but label claimed only to "support" heart health, creating a mismatch that would require courts to impose a higher substantiation standard than federal law). Instead, the allegations within Plaintiff's putative Complaint consist of bare and conclusory assertions that the Products are "ineffective," entirely bereft of the factual enhancement required for plausibility. *Iqbal*, 556 U.S. at 678 (conclusory statements are "not entitled to the assumption of truth"). (Compl. ¶¶ 129, 139, 161).

Without plausible allegations of affirmative falsity, the fraudulent and unfair prongs of the UCL, as well as the FAL and CLRA claims, necessarily fail, as they all hinge on the same unsupported theory of deception or misbranding. *See Kroessler*, 977 F.3d at 812

SINGH, SINGH & TRAUBEN, LLP

8

(preemption applies to any attempt to hold defendants to a "different substantiation standard" than the FDCA for dietary supplements).

## C. There is No Plausible Implied Disease Claim Under the Reasonable Consumer Test

Plaintiffs' deception theory fares no better under the objective reasonable consumer standard, which demands proof that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023), quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). In finding the District Court correctly rejected any implied disease claims on the face of the product label alone, the Ninth Circuit stated as follows:

> The district court correctly concluded, however, that CVS's glucosamine-based supplements do not present implied disease claims on the face of the label alone. None of the words on the labels fit within the FDA's guidance on telltale implied disease claims. On the contrary, most of the labels' representations perfectly match the FDA's examples of proper structure/function claims. Furthermore, as Kroessler himself notes, the images on the labels show an elderly couple leisurely walking along a beach, far from suffering with the symptoms of arthritis. The labels do not present these pictures as "before and after" comparisons, implying the healing of arthritic patients. Therefore, based on the FDCA, enabling regulations, and the FDA's accompanying guidance, CVS's glucosamine-based supplements do not present implied disease claims on the face of the labels alone.

*Kroessler*, 977 F.3d at 816.

Similarly, here, it is beyond peradventure that the labels on the subject Products present no implied disease claims on their face and do not plausibly imply disease/aphrodisiac claims to a reasonable consumer. Rather, the Products representations are paradigmatic structure/function claims, permissible under the FDCA so long as they describe "the role of a nutrient or dietary ingredient intended to affect the structure or function in humans" without referencing disease. 21 U.S.C. § 343(r)(6); 21 C.F.R. § 101.93(g)(2); see 65 Fed. Reg. 1000, 1028–29 (Jan. 6, 2000) (FDA guidance approving claims like "strengthen, improve, and protect" for immune support; analogous to "enhance"

SINGH, SINGH & TRAUBEN, LLP

1    or "boost" for sexual/ hormonal functions). "Male enhancement," "enhanced pleasure &

2    performance," and "testosterone boost" thus characterize support for normal physiological

3    processes, not treatment of clinical dysfunctions or diseases that are explicitly disclaimed.

4    *Dachauer*, 913 F.3d at 847 ("structure/function claims may use general terms such as

5    'strengthen,' 'improve,' and 'protect' as long as the claims 'do not suggest disease

6    prevention or treatment'").

7           Moreover, it is well established that an allegedly ambiguous statement on the front

8    of a label can be clarified by the side or back label to avoid misleading consumers.

9    *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 779 (9th Cir. 2024) ("the back label

10   clarified the ambiguity on the front label and removed any reasonable possibility that

11   consumers would be misled"); *McGinity*, 69 F.4th at 1099 ("when . . . a front label is

12   ambiguous, the ambiguity can be resolved by reference to the back label"). When defining

13   ambiguity, the Ninth Circuit holds that "a front label is not ambiguous simply because it is

14   susceptible to two possible meanings; a front label is ambiguous when reasonable

15   consumers would necessarily require more information before reasonably concluding that

16   the label is making a particular representation." *Whiteside*, 108 F.4th at 781; see also *Moore

17   v. Trader Joe's Co.*, 4 F.4th 874, 882, 886 (9th Cir. 2021) (noting reasonable consumers

18   would need more information before they could reasonably determine the meaning behind

19   an ambiguous label and determining "representations on the front label and the ingredients

20   statement . . . are not misleading to a reasonable consumer as a matter of law").

21          Here, any facial ambiguity disintegrates upon a holistic review of the label, with the

22   disclaimer on the packaging placing consumers on notice of these clear qualifications,

23   foreclosing any alleged deception upon a reasonable consumer: "These statements have

24   not been evaluated by the Food and Drug Administration. This product is not intended to

25   diagnose, treat, cure or prevent any disease." (Compl. ¶¶ 116, 120). *Whiteside*, 108 F.4th

26   at 785; *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008).

27          Also relevant to the analysis is whether the potentially misleading label or statement

28   is accompanied by an asterisk. As a matter of law, "the presence of an asterisk alone puts

SINGH,
SINGH &
TRAUBEN,
LLP

a [reasonable] consumer on notice that there are qualifications or caveats" to the label or statement in question. *Whiteside*, 108 F.4th at 785; see also *Bobo v. Optimum Nutrition, Inc.*, No.: 14CV2408 BEN (KSC), 2015 WL 13102417, at *5 (S.D. Cal. Sep. 18, 2015) ("[p]laintiff cannot simply look to the statement on the front label, ignore the asterisk, and claim he has been misled"). In *Whiteside*, the Ninth Circuit held that "[t]he asterisk and [disclaimer] . . ., paired with the back label ingredients list, [made] it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Whiteside*, 108 F.4th at 785 (internal quotation marks omitted), citing Williams, 552 F.3d at 939. Here, once again, the conspicuous and prominent asterisks on the subject boxes clearly place any reasonable consumer on notice that there are qualifications or caveats to the label or statement in question. [ECF 1 at 4, 9, 11, 14].

Plaintiffs' conclusory contention that the Products somehow mislead reasonable consumers is directly contradicted by Ninth Circuit precedent and is unsustainable as a matter of law.

## D.    The Complaint Fails Rule 9(b) Particularity

All five causes of action in the Complaint sound in fraud and must therefore satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (UCL and CLRA claims sound in fraud when premised on misleading representations); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–06 (9th Cir. 2003) (Rule 9(b) applies to the entire complaint if grounded in averments of fraud, even if fraud is not an essential element).

Here, Plaintiffs' Complaint flouts this particularity mandate. Without delineating each Defendants' alleged role, Plaintiffs generically accuse Defendants of an alleged unified course of fraudulent conduct through purportedly false and misleading labels and advertising that allegedly deceived consumers into believing the Products would provide enhancement benefits they do not deliver. (Compl. ¶¶ 5, 9, 37, 50, 64). Such claims are "grounded in fraud" and require particularity as to the "who, what, when, where, and how of the misconduct charged," including what is false or misleading about the statements and

SINGH,
SINGH &
TRAUBEN,
LLP

why. *Kearns*, 567 F.3d at 1124, <u>quoting</u> *Vess*, 317 F.3d at 1106); <u>see</u> <u>also</u> *Moore v. Mars Petcare US, Inc*., 966 F.3d 1007, 1019 (9th Cir. 2020) (applying Rule 9(b) to UCL, FAL, and CLRA claims alleging deceptive product labeling).

Plaintiffs' allegations fall short of this standard. Plaintiffs do not plead which specific statements on the labels or in advertising they saw and relied upon. (<u>Compl.</u> ¶¶ 122-130). Merely attaching photos of the labels is insufficient to cure this defect, as Rule 9(b) requires Plaintiffs to articulate their personal reliance on specific misrepresentations. *Kearns*, 567 F.3d at 1126 (even though purchaser alleged seller's marketing materials and representations led him to believe vehicles were subjected to rigorous inspections by specially trained technicians, he did not specify what marketing materials actually stated, when he was exposed to them, or which ones he found material in making decision to purchase); <u>see also</u> *Gershman v. Bayer HealthCare LLC*, No. 14-CV-05332-JSC, 2015 WL 2170214, at *7 (N.D. Cal. May 8, 2015) (dismissing UCL and CLRA claims in dietary supplement case under Rule 9(b) where plaintiffs failed to specify how cited studies directly contradicted the exact label claims, rendering allegations of falsity implausible).

Finally, Plaintiffs fail to explain with particularity why the alleged statements are false or misleading. Instead, Plaintiffs' falsity allegations are entirely conclusory, such as "none of the ingredients . . . safely and effectively" provide benefits or that the Products are "ineffective." (<u>Compl.</u> ¶¶ 5, 129). They cite no studies, expert opinions, or personal facts (e.g., medical evaluations) to support falsity, only vague assertions that the claims imply unapproved drug effects. This is insufficient under Rule 9(b), which requires explaining what is false or misleading about the defendant's statements and why those statements are false. *Gershman*, 2015 WL 2170214, at *4-5.

These deficiencies are fatal across all claims, as the FAL and "unfair" UCL prong also incorporate the same fraudulent allegations. <u>See</u> *Kearns*, 567 F.3d at 1125 (applying Rule 9(b) to all prongs where unified deceptive scheme alleged).

///

///

SINGH,
SINGH &
TRAUBEN,
LLP

1

### E.     Plaintiffs Lack Article III Standing to Pursue Injunctive Relief

Plaintiffs seek injunctive relief in connection with their false advertising and CLRA claims. (Compl. ¶¶ 174-184). However, Plaintiffs do not have Article III standing to pursue the injunctive relief requested in the Complaint, completely failing to show "a sufficient likelihood that he will again be wronged in a similar way." *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983).

UCL and CLRA injunctions require a "real or immediate threat . . . that [they] will again be wronged in a similar way." *Cimoli v. Alacer Corp.*, 546 F.Supp.3d 897, 906 (N.D. Cal. 2021), quoting *Lyons*, 461 U.S. at 111 (1983); see also *Mayfield v. U.S.*, 599 F.3d 964, 970 (9th Cir. 2010) ("[p]ast exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects"). Plaintiffs allege they claim to now know the Products are "both illegal and ineffective" but that they "would consider purchasing" the Products "in the future if they could be assured that the products were (1) safe and effective and (2) sold in compliance with all FDA regulations and California law." (Compl. ¶¶ 129-130).

This self-serving allegation of purported future interest fails, however, as Plaintiffs can ascertain the truthfulness of the statements without repurchasing the Products, including by inspecting labels, disclaimers, and ingredients, all of which is publicly available and attached to the Complaint. *Cimoli*, 546 F. Supp. 3d at 906–07 (N.D. Cal. 2021) (no standing to seek injunctive relief where plaintiff "aware that the dosage representations . . . refer to a serving size," distinguishing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018), where no pre-purchase verification was possible); see also *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG, 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018) (plaintiff lacked standing for injunctive relief because "now that [p]laintiff is on notice about potential underfilling, he could easily determine the number of pretzels in each package before making a future purchase by simply reading the back panel . . ."); *Shanks v. Jarrow Formulas, Inc.*, No. LACV1809437 PAAFMX, 2019 WL 7905745, at *5 (C.D. Cal. Dec. 27, 2019) (plaintiff lacked standing

SINGH,
SINGH &
TRAUBEN,
LLP

because "in the future [plaintiff can] simply look at the label on Defendant's coconut oil ... and put it back"); *Matic v. United States Nutrition, Inc.*, No. CV189592PSGAFMX, 2019 WL 3084335, at *8 (C.D. Cal. Mar. 27, 2019) (plaintiff lacked standing because "he knows precisely where to find" clarifying information on a product label).[2]

Here, unlike in *Davidson*, the putative Plaintiffs have (and cannot reasonably claim they lack) a way to determine the truth of the representations without purchasing the Products, namely, they can examine the full labels, including the ingredient list and mandatory FDA disclaimer on the back panel, which clarify that the Products are dietary supplements "not intended to diagnose, treat, cure, or prevent any disease." (Compl. ¶¶ 116, 120; see *Cimoli*, 546 F. Supp. 3d at 906 (plaintiff aware that "dosage representations on the front . . . refer to a serving size" by checking back label). Because Plaintiffs know they can verify the Products' claims, ingredients, and legal status by consulting the labels, they cannot plausibly allege a real or immediate threat of similar future harm. *Cimoli*, 546 F. Supp. 3d at 907 ("[b]ecause Plaintiff knows that he can determine the Products' dosages by consulting the back labels, Plaintiff cannot plausibly allege that he faces a real or immediate threat of similar, future harm").

### F.    Plaintiffs' Claims Are Time-Barred

Plaintiffs' claims are barred by the applicable statutes of limitations. The UCL has a four-year limitations period (Bus. & Prof. Code § 17208), while the FAL and CLRA have three-year periods (Code Civ. Proc. § 338(a); Civ. Code § 1783). Any such claims accrue upon purchase and injury. *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1196 (2013).

The Complaint was filed on August 29, 2025. Stinson's last purchase is alleged to have been in 2020, over five years earlier, making his claims untimely as a matter of law.

---

[2] As detailed by the court in *Cimoli*, the plaintiff in *Davidson* purchased flushable wipes manufactured by the defendant, but later learned the wipes were not in fact flushable. *Davidson* at 961-962. The court in *Davidson* held that the plaintiff had Article III standing to seek injunctive relief because the plaintiff had "no way of determining whether the representation 'flushable' [was] in fact true" without first purchasing the wipes and therefore a "threatened injury" was still "impending." (*Id.* at 972).

SINGH,
SINGH &
TRAUBEN,
LLP

(Compl. ¶ 123). Williams' and Brewer's pre-2022 purchases are also barred under the three-year SOL for FAL/CLRA. (Id. ¶¶ 122, 124).

Cognizant of these temporal deficiencies, Plaintiffs preemptively attempt to invoke the delayed discovery doctrine, alleging they first learned of violations in May 2025 due to lack of expertise in FDA regulations. (Id. ¶¶ 131–132). This purported belated discovery of "FDA regulations" is irrelevant to the actual accrual of Plaintiffs' alleged injury. As alleged, contemporaneous with their respective purchase of the Products, "Plaintiffs used the Extenze Products as directed, but the products failed to deliver the advertised benefits." (Id. ¶ 13). Plaintiffs' alleged later discovery of potentially relevant legal frameworks does not in any manner alter their own allegations of the inefficacy of the Products and the accrual of the statute of limitations. There mere delay in learning about the law supporting a potential legal right is not sufficient to toll the statute of limitations for a claim that has already accrued.

Further, delayed discovery requires pleading with particularity the time/manner of discovery and inability to discover earlier despite reasonable diligence. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807–08 (2005). Nonetheless, here, Plaintiffs' purported "delayed discovery" allegations are entirely conclusory: Plaintiffs provide no specifics on how they discovered the facts, and the claims are based on public labels and regulations discoverable at purchase. See *Plumlee v. Pfizer, Inc.*, No. 13-CV-00414-LHK, 2014 WL 695024, at *7–8 (N.D. Cal. Feb. 21, 2014) (rejecting delayed discovery in efficacy case where facts were public).

Equitable tolling likewise fails based upon the same lack of diligence. *Avagyan v. Holder*, 646 F.3d 672, 677 (9th Cir. 2011). Plaintiffs' "continuing duty" and "fiduciary-like" allegations are wholly unsupported legal conclusions. Because the time bar is apparent on the face of the Complaint and tolling is implausibly pleaded, dismissal is warranted on this basis alone.

///

///

SINGH, SINGH & TRAUBEN, LLP

## V.    THE COURT SHOULD DENY LEAVE TO AMEND

Dismissal without leave to amend is proper where amendment would be futile, as "any amendment would be an exercise in futility." *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1103 (9th Cir. 2018); *Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013) (futility includes time-barred claims). Here, federal preemption bars all claims as a matter of law, and no set of facts could alter that outcome. Moreover, the Product labels themselves cannot be retrofitted through amendment to imply disease claims, as their text, disclaimers, and asterisks comply with FDCA standards on their face. See *Quonset Partners, LLC v. City of Coachella*, No. EDCV 22-672 JGM, 2022 WL 18359138, at *3 (C.D. Cal. Dec. 9, 2022) ("dismissal without leave to amend is proper if it is clear that the complaint [cannot] be saved by amendment"), quoting *Somers*, 729 F.3d at 960.

## VI.    CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety without leave to amend.

DATED: November 26, 2025                 Respectfully Submitted,

SINGH, SINGH & TRAUBEN, LLP
MICHAEL A. TRAUBEN


By:    */s/ Michael A. Trauben*
          Michael A. Trauben

***Attorneys for Defendants***
GLOBAL PRODUCT MANAGEMENT, INC. *and*
DISH DIRECT, INC.

SINGH,
SINGH &
TRAUBEN,
LLP

The undersigned, counsel of record for defendants Global Product Management, Inc. and Dish Direct, Inc., certifies that this memorandum of points and authorities contains 5462 words, which complies with the word limit of L.R. 11-6.1.

**DATED**: November 26, 2025                    Respectfully Submitted,

                                                **SINGH, SINGH & TRAUBEN, LLP**
                                                **MICHAEL A. TRAUBEN**


                                                By:   _/s/ Michael A. Trauben_
                                                      Michael A. Trauben

                                                ***Attorneys for Defendants***
                                                GLOBAL PRODUCT MANAGEMENT, INC. *and*
                                                DISH DIRECT, INC.

SINGH,
SINGH &
TRAUBEN,
LLP